LOUIS M. BUBALA III, ESQ.
Nevada State Bar No. 8974
ARMSTRONG TEASDALE LLP
50 W. Liberty St., Ste. 950
Reno, NV 89501
Telephone:  775.322.7400
Facsimile:  775.322.9049
Email:  lbubala@armstrongteasdale.com

Attorneys for Banco Popular North America

ELECTRONICALLY FILED ON
January 11, 2013

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CARLTON EDWARD HULL aka CARL HULL,<br><br>Debtor. | Case No.:  BK-12-50554-BTB<br><br>Chapter:    11<br><br>**OBJECTION TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION, WITH CERTIFICATE OF SERVICE**<br><br>Hearing Date:  1/25/13<br>Hearing Time:  3:00 p.m. |

## I.  INTRODUCTION

Unsecured creditor Banco Popular North America ("BPNA") objects to Debtor's proposed plan of reorganization.  The objection is premised on Debtor's failure to file or otherwise disclose information about businesses that are substantially owned by him.  BPNA is especially concerned because Debtor's debts to BPNA arise from his guarantee of business loans for his businesses.  The information Debtor has filed was untimely and insufficient, and Debtor has not filed mandatory updated reports on his businesses.  Without those reports, it is impossible to tell the financial status of Debtor's businesses.  It also is impossible to tell whether Debtor has or will use funds from his businesses to pay his personal creditors—in violation of the perfected security interests that BPNA holds against two of Debtor's businesses.

BPNA asked Debtor a month ago to file current financials for his businesses.  Debtor advised that it would try to do so on or before January 11, 2013—the deadline for creditors to object to Debtor's plan.  To date, business financials have not been filed.  Any filing of his business financials

is untimely, period, and insufficient to give BPNA and other creditors information about the financial status of his businesses and Debtor's plans for them. Debtor has not complied with his obligations under the code, and the plan should not be confirmed.

## II.  LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 2015.3(a) states that a Chapter 11 debtor "shall file periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest. The reports shall be prepared as prescribed by the appropriate Official Form, and shall be based upon the most recent information reasonably available to the trustee or debtor in possession." The first report "shall be filed" no later than a week before the first date set for the creditors meeting, and subsequent reports "shall be filed no less frequently than every six months thereafter." Fed. R. Bankr. P. 2015.3(b).

The reporting requirements are specified on Official Form B26, available online at http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/BK_Forms_Pending_2008/B26_Form26_1208.pdf. The form requires three exhibits for each business. "Exhibit A contains a valuation estimate for the entity as of a date not more than two years prior to the date of this report. It also contains a description of the valuation method used. Exhibit B contains a balance sheet, a statement of income (loss), a statement of cash flows, and a statement of changes in shareholders' or partners' equity (deficit) for the period covered by the Entity Report, along with summarized footnotes. Exhibit C contains a description of the entity's business operations." As noted in *Collier*, "The information required by Official Form 26 is extensive." 9 *Collier on Bankruptcy* ¶ 2015.3.04 (16th ed. 2012).

The reporting requirements were adopted in 2005. BAPCPA directed the Judicial Conference to propose rules and prescribe forms that require Chapter 11 debtors "to file period financial and other reports designed to provide information concerning the value, operations and profitability of any closely held corporation, partnership or other entity in which the chapter 11 debtor holds a 'substantial or controlling interest.'" 9 *Collier on Bankruptcy* ¶ 2015.3.01 & n.1 (16th ed. 2012), *citing* Pub. L. 108-9, § 419(a) (2005). The new rule "was intended to provide 'more complete

information regarding the assets of the estate,' and the statute's stated purpose is 'to assist parties in interest [in] taking steps to ensure the debtor's interest [in an entity] is used for the payment of allowed claims against the debtor." *Id.* & n.2, *quoting* Pub. L. 108-9, § 419(b) (2005).

BPNA has only located one published decision that addresses the failure to comply with the corporate reporting requirements, a case where the debtor repeatedly failed to file the necessary financial reports for himself and his businesses on time. *In re Whetten*, 473 B.R. 380, 383-84 (Bankr. D. Colo. 2012). Judge Brown upheld the importance of the financial reporting:

> Monthly reports and the financial disclosures contained within them are the life-blood of the Chapter 11 process and are more than mere busy work. Without these reports, the UST and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization. The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize. Thus, non-compliance is not a mere technicality. Habitual non-compliance calls in to question a debtor's ability to effectively reorganize. If a debtor does not fulfill this basic obligation during the Chapter 11 case, when it knows it will have to come before the court on any number of occasions, how can the creditors have any confidence that the debtor will timely and accurately report its income and make the required distributions under its plan, when the court and the UST are no longer monitoring the case? Consequently, the importance of filing monthly reports cannot be over-emphasized. A debtor ignores this basic duty at its own peril.

*Id.* at 383-84 (internal punctuation and citation omitted). Judge Brown also criticized Debtor's practice of filing financial reports after the reporting deadlines. "The late filing of catch-up monthly reports does not satisfactorily explain or excuse failure to satisfy a debtor's duties as a chapter 11 debtor. Filing catch-up reports is akin to locking the barn doors after the horses have already gotten out." *Id.* at 383 (internal punctuation and citation omitted). The Court held the reporting problems constituted cause for dismissal, a remedy consistent with Local Rule 2015.3(c).

### III.  FACTUAL AND PROCEDURAL HISTORY

1. BPNA was owed $724,517.77 by the Debtor on the petition date. **Ex. 1**, Cl. Reg. #15.

2. The debts arise from Debtor's personal obligations on loans to his businesses, Geometric Services Association, Fast Cash, Inc., and Advanced Check Cashing & Payday Loans. *Id.*

3. BPNA's rights against Debtor's businesses are secured by UCC financing statements and continuations from Geometric Services Association and Fast Cash, Inc., perfected and recorded

3

(including continuations) with the Nevada Secretary of State. *Id.* (UCC papers for Geometric Services Association); **Ex. 2** (UCC papers for Fast Cash, Inc.).

4.  Debtor filed his bankruptcy petition and schedules and statements on March 15, 2012 (Ct. Dkt. #1).

5.  Based on the creditors meeting scheduled for April 16, 2012 (Ct. Dkt. #4), the financials for Debtor's businesses were to be filed or before April 9, 2012. Fed. R. Bankr. P. 2015.3(b).

6.  On April 4, 2012, BPNA's counsel emailed to Debtor's counsel, requesting that the business financials be filed with court by April 9, 2012, that is, a week before the creditors meeting, as required by Rule 2015.3. **Ex. 3**, 4/4/12 Salinas/Bubala-Darby Email & Ltr.

7.  On April 16, 2012, four hours before the creditors meeting, Debtor filed financial reports for his businesses (Ct. Dkt. #24). The report, which is to be filed under penalty of perjury, includes Debtor's name on the signature line but lacks a signature or a /s/ for the electronic entry of his signature. As discussed below, the report does not comply with Debtor's reporting obligations.

8.  Debtor's business financials were to be updated "no less frequently than every six months," that is, by October 9, 2012. Fed. R. Bankr. P. 2015.3(b). No additional reports have been filed to date.

9.  On December 2 and 21, 2012, BPNA's counsel requested the Debtor's counsel filed the reports on Debtor's businesses. On January 1, 2013, Debtor's counsel advised that he would work with Debtor to file business financials or before January 11, 2013. **Ex. 4**, Bubala-Darby emails.

10.  To date, the following is the information known about Debtor's businesses. The information is, at best, incomplete and outdated. But the information does suggest that there are assets that not subject to proper reporting and utilization by the Debtor.

**Geometric Services Association**

Debtor is the sole owner of Geometric (Ct. Dkt. #1, Sch. B, ¶13). Debtor describes it as a "check cashing and payday loan business" and asserted that "debts exceed assets/value" (Ct. Dkt. #16 at § 4.2). The exact status of Geometric is unclear. Debtor described it as a dissolved entity (Ct. Dkt. #1, Sch. H). In the U.S. Trustee's notes from the creditor's meeting, Mr. Cossitt noted that the schedules should be amended to state that Geometric is not dissolved (Ct. Dkt. #26 at ¶8). No

amendments have been filed.  The Nevada Secretary of State lists Geometric as an active corporation, including an annual list of directors and officers filed postpetition with the Secretary of State.  **Ex. 5**, Geometric/Sec. of State online records.  In the last month, Mr. Hull registered two fictitious names for Geometric, doing business as Advanced Gold & Silver and as Advanced Credit.  **Ex. 6**, Washoe County Clerk Online DBA registrations filed Dec. 13, 2012.

Although this suggests Geometric is an operating business, there is no information about Geometric on file with the Court after 2011.  Geometric itself was a Chapter 11 debtor in 2010 for approximately five months before Mr. Hull dismissed the case.  *In re Geometric Servs. Assn.*, Case No. 10-51814-gwz (Bankr. D. Nev.).  Geometric reported income of more than $70,000 for approximately the first four months of 2010 (Geometric Ct. Dkt. #12, SOFA ¶ 1), as well as more than $50,000 during the five months postpetition (Geometric Ct. Dkt. #s 22, 24, 27, 38 & 42, MORs).

Other disclosures in Geometric's bankruptcy have heightened BPNA's concerns with Mr. Hull's financial decisions.  Notwithstanding BPNA's security interest, Geometric paid $46,386 in the year prior in "owner distributions and compensation" to Mr. Hull (Geometric Ct. Dkt. #12, SOFA ¶ 23); $9,000 to CEH, LLC, an apparent related entity since it utilized Mr. Hull's initials, but not registered with the Secretary of State or as a fictitious name with Washoe County (Geometric Ct. Dkt. #12, SOFA ¶ 3); $11,000 to bankruptcy and litigation counsel (Geometric Ct. Dkt. #1 & 12, SOFA ¶ 3); and $29,000 on credit cards (Geometric Ct. Dkt. #12, SOFA ¶ 3).

Debtor did file some financials for Geometric, with a 2011 P&L Statement and Balance Sheet as of December 31, 2011 (Ct. Dkt. #24).  They reflect a business that received $106,000 in income; operated at a $16,000 loss; held $683,000 in assets; and, of its $683,000 in liabilities, owed $546,000 to BPNA and just $137,000 to other entities.  *Id.*

However, the Geometric financials do not comply with the reporting requirements of Rule 2015.3.  The rule requires much more disclosure:  A valuation estimate for the entity as of a date not more than two years prior; a description of the valuation method used; a statement of cash flows; a statement of changes in shareholders' or partners' equity (deficit) for the period covered by the Entity Report, along with summarized footnotes; and a description of the entity's business operations.  None of this information is in the report filed by Debtor.

Debtor has not filed any additional information about Geometric, ignoring his obligation under Rule 2015.3. None of Debtor's personal monthly operating reports make any reference to Geometric (Ct. Dkt. #28, 49, 44, 50, 62, 69, 92). Debtor has not filed a personal monthly operating report for October 2012.

The value and operations of Geometric also are unclear. Debtor scheduled his interest in the company at $0, stating that "debt of entity exceeds assets/value" (Ct. Dkt. #1, Sch. B, ¶13). In the disclosure statement, Debtor listed Geometric with a fair market value of $1,000 and with "total secured debt/exemptions" at $1,000 (Ct. Dkt. #16 at § 4.2) (Debtor did not claim an exemption in his interest in Geometric, Ct. Dkt. #1, Sch. C). Debtor then asserts that there is no net equity in Geometric for the estate (Ct. Dkt. #16 at § 4.2).

Debtor scheduled Geometric as one of his twenty largest unsecured creditors, owed $600,000 for business loans (Ct. Dkt. #1, 20 Largest), although Debtor did not schedule Geometric as a creditor (Ct. Dkt. #1, Sch. F). Debtor lists Geometric among the unsecured creditors to be paid through the plan, owed $600,000 for business loans (Ct. Dkt. #16 at § 5.4).

Debtor recognizes that he and Geometric have financial obligations to BPNA, as he scheduled Geometric as a co-obligor of the debts owed to BPNA (Ct. Dkt. #1, Sch. H).

**Advanced Check Cashing & Payday Loans**

As with Geometric, Debtor is the sole owner of Advanced (Ct. Dkt. #1, Sch. B, ¶13), which Debtor says is a "check cashing and payday loan business" (Ct. Dkt. #16 at § 4.2). It apparently remains an operating business, as it is active with the Nevada Secretary of State, including its annual list of directors and officers filed postpetition. **Ex. 7**, Advanced/Sec. of State online records. Debtor's current income filed with his petition identified his non-debtor wife as president of "Advanced Paycheck Cashing," receiving $1,167 a month (Ct. Dkt. #1, Sch. H). It is unclear whether she works for Advanced Check Cashing & Payday Loans.

Although this suggests Advanced is an operating business, there is no information about it on file with the Court after 2011. Advanced itself was a Chapter 11 debtor in 2010 for approximately five months before Mr. Hull dismissed the case. *In re Advanced Check Cashing & Payday Loans*, Case No. 10-51815-gwz (Bankr. D. Nev.). Advanced reported income of more than $90,000 for

approximately the first four months of 2010 (Advanced Ct. Dkt. #14, SOFA ¶ 1), as well as

approximately $100,000 during the five months postpetition (Advanced Ct. Dkt. #s 24, 26; then as

jointly administered, Geometric Ct. Dkt. #s 28, 37, 43, MORs).

Debtor did file some financials for Advanced, with a 2011 P&L Statement and Balance Sheet

as of December 31, 2011 (Ct. Dkt. #24).  They reflect a business that received $249,000 in income;

operated at a $39,000 profit; held $156,000 in assets; and listed $56,000 in liabilities other than

Debtor's equity.  *Id.*  Even though Advanced admitted in its prior bankruptcy case that BPNA is a

secured creditor (*see In re Advanced Check Cashing*, Case No. 10-51815-gwz, Ct. Dkt. #13, Sch. D),

as a co-obligor on Geometric's debt (*see* Ex. 1, Hull Cl. #15 at PDF Page 15), Mr. Hull fails to list

any obligation to BPNA in his 2011 Balance Sheet.  Once again, Mr. Hull's financial management

has put BPNA at risk.

Advanced's financials do not comply with the reporting requirements of Rule 2015.3.  The

rule requires much more disclosure:  A valuation estimate for the entity as of a date not more than

two years prior; a description of the valuation method used; a statement of cash flows; a statement of

changes in shareholders' or partners' equity (deficit) for the period covered by the Entity Report,

along with summarized footnotes; and a description of the entity's business operations.  None of this

information is in the report filed by Debtor.

Debtor has not filed any additional information about Advanced, ignoring his obligation

under Rule 2015.3.  None of Debtor's personal monthly operating reports make any reference to

Advanced (Ct. Dkt. #28, 49, 44, 50, 62, 69, 92).  As noted above, Debtor has not filed a personal

monthly operating report for October 2012.

The value and operations of Advanced also are unclear.  Debtor scheduled his interest in the

company at $1,000, stating that "debt of entity exceeds assets/value" (Ct. Dkt. #1, Sch. B, ¶13).

Debtor makes the same statements in his disclosure statement, saying there is no equity for the estate

(Ct. Dkt. #16 at § 4.2).  Debtor did assert an exemption in his interest in Advanced, albeit for only

$1,000 (Ct. Dkt. #1, Sch. C).  However, given that the 2011 balance sheet reflects nearly $100,000 in

equity in Advanced, Debtor's financial reporting on his schedules and disclosure statement appear

flawed.  But because Debtor has not complied with his financial reporting obligations for Advanced,

it is impossible to know for certain.  In any event, Debtor should not be allowed to retain what may be $100,000 in equity with a plan that provides a hope and prayer for pennies on the dollar.  *See* 11 U.S.C. § 1129(b)(1).

**Fast Cash, Inc.**

The only reference to Fast Cash is that it is dissolved and a co-obligor on Debtor's obligations owed to BPNA (Ct. Dkt. #1, Sch. H).  The Nevada Secretary of State's records reflect that Fast Cash was dissolved in May 2011, effective May 2010.  While there may not be business operations that required reporting, Debtor has not provided any information about the distribution of Fast Cash's assets, which were either distributed without regard to BPNA's security interest or remain in Debtor's possession subject to that security interest.

### IV.  ARGUMENT

Debtor cannot confirm a plan that does not comply with his obligations to report the financial information for his business.  The reporting is a statutory direction from Congress in BAPCA and adopted in Rule 2015.3.  By failing to abide by the reporting requirements, Debtor's plan cannot be confirmed because he has not complied with the applicable provisions of Title 11 and he has not proposed his plan in good faith.  11 U.S.C. §§ 1129(a)(2), (3).

DATED: Jan. 11, 2013                    ARMSTRONG TEASDALE LLP


                                        By:    /s/ Louis M. Bubala III            .
                                               LOUIS M. BUBALA III, ESQ.

                                        Attorneys for Banco Popular North America

## CERTIFICATE OF SERVICE

1.    On Jan. 11, 2013, I served the following document(s):

**OBJECTION TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION, WITH CERTIFICATE OF SERVICE**

2.    I served the above-named document(s) by the following means to the persons as listed below:

a.    **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

CHELSEA A. CROWTON on behalf of Creditor FEDERAL NATIONAL MORTGAGE ASSOCIATION
ccrowton@wrightlegal.net, ebaker@wrightlegal.net;amontano@wrightlegal.net

KEVIN A. DARBY on behalf of Debtor CARLTON HULL
kevin@darbylawpractice.com,
tricia@darbylawpractice.com;tyler@darbylawpractice.com;alecia@darbylawpractice.com;kendal@darbylawpractice.com;sarah@darbylawpractice.com;itati@darbylawpractice.com;sawyer@darbylawpractice.com

KEVIN HAHN on behalf of Creditor JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
kevin@mclaw.org, JTran@mclaw.org

GAYLE A. KERN on behalf of Creditor WELLS FARGO BANK, N.A.
gakltd@kernltd.com, christinelamia@kernltd.com;nicolemilton@kernltd.com

JOHN F MURTHA on behalf of Creditor SIERRA PACIFIC FEDERAL CREDIT UNION
jmurtha@woodburnandwedge.com

DONNA M. OSBORN on behalf of Creditor FEDERAL NATIONAL MORTGAGE ASSOCIATION
donnamosborn@live.com

DEAN R. PROBER on behalf of Creditor Bank of America, N.A. c/o Prober & Raphael, A Law Corporation
cmartin@pralc.com

NATHAN F. SMITH on behalf of Creditor HOMEWARD RESIDENTIAL, INC.
nathan@mclaw.org, amy@mclaw.org

U.S. TRUSTEE - RN - 11
USTPRegion17.RE.ECF@usdoj.gov

GREGORY L. WILDE on behalf of Creditor BANK OF AMERICA, N.A.
nvbk@tblaw.com,
jrgiordano@tblaw.com;jlferran@tblaw.com;grgarrett@tblaw.com;pjkutneski@tblaw.com;maerwin@tblaw.com;tmrovere@tblaw.com

**XX** b.    **United States mail, postage fully prepaid** (list persons and addresses): For mailing on Jan. 14, 2013

RECOVERY MANAGEMENT SYSTEMS CORPORATION
25 S.E. SECOND AVENUE
INGRAHAM BUILDING, SUITE 1120
MIAMI, FL 33131-1605

☐ c.    **Personal Service** (list persons and addresses)
I personally delivered the document(s) to the persons at these addresses:

☐ d.    **By direct email (as opposed to through the ECF System)** (list persons and email addresses):

☐ e.    **By fax transmission** (list persons and fax numbers):

☐ f.    **By messenger**:

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 11th day of Jan., 2013.

L. Bubala _____      /s/ L. Bubala _____.
Name                        Signature